IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SNF INC., | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | §   CIVIL ACTION NO: 4:21-cv-01189 |
| | § |
| ZL CHEMICALS LTD., | § |
| POLYMER EXPERTS LLC, AND | § |
| ZL EOR CHEMICALS LTD., | § |
| | § |
| Defendants. | § |
| | § |

**DEFENDANTS' ANSWER TO PLAINTIFF'S
FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES,
COUNTERCLAIMS AND REQUEST FOR DECLARATORY RELIEF**

Defendants ZL Chemicals Ltd. ("ZL USA"), Polymer Experts LLC ("PE") and ZL EOR Chemicals Ltd. ("ZL EOR," and collectively the "Defendants") file this Answer, Affirmative Defenses, Counterclaims and Request for Declaratory Relief in response to Plaintiff SNF Inc.'s ("Plaintiff" or "SNF USA") First Amended Complaint and respectfully states as follows:

1. Defendants generally deny all the allegations contained in Paragraph 1 of Plaintiff's First Amended Complaint.

**PARTIES**

2. On information and belief, Defendants admit that SNF USA is a Delaware corporation registered to do business in Texas as SNF (TX) with its principal place of business in Riceboro, Georgia.

3. Defendants admit that ZL USA is an entity incorporated in Delaware, registered to do business in Texas, with mailing address is 4406 W 12th Street, Houston, TX 77055.

1

4. Defendants admit that PE is an entity incorporated in Oman with mailing address P.O. Box 1503, PC133, Oman. Defendants deny that PE does business within the State of Texas.

5. Defendants admit that ZL EOR is an entity incorporated in Canada with mailing address 325-2184 West Broadway, Vancouver, BC, V6K 2E1, Canada. Defendants deny that ZL EOR does business within the State of Texas.

## JURISDICTION AND VENUE

6. Defendants admit that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as it arises under the Lanham Act, 15 U.S.C. § 1125(a)(1).

7. Defendants admit that venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL BACKGROUND

8. The statement contained in Paragraph 8 is a conclusion to which no answer is required.

9. The statement contained in Paragraph 9 is a conclusion to which no answer is required.

10. Defendants are without sufficient knowledge to admit or deny the allegations contained in Paragraph 10. To the extent an answer is required, Defendants deny the allegations.

11. Defendants are without sufficient knowledge to admit or deny the allegations contained in Paragraph 11. Defendants are not privy to the location of SNF USA's largest production site or the number of its clients operating in West Texas. To the extent an answer is required, Defendants deny the allegations.

12. To the extent an answer is required in response to the allegations contained in Paragraph 12, they are denied.

13. Defendants admit that ZL USA maintains offices in Houston and denies the remaining allegations contained in Paragraph 13.

14. To the extent an answer is required in response to the allegations contained in Paragraph 14, they are denied.

15. Defendants admit the allegations contained in Paragraph 15 of Plaintiff's First Amended Complaint.

16. Defendants admit that additional tariffs affecting the pricing of polyacrylamide were instituted. Defendants deny knowing if SNF USA was forced to reduce its price per pound of polyacrylamide. To the extent an answer is required in response to the remaining allegations, they are denied.

17. Defendants are without sufficient knowledge to admit or deny the allegations contained in Paragraph 17. To the extent an answer is required in response to the allegations, they are denied.

18. Defendants admit that PE opened a factory in Salalah, Oman in 2019. Defendants admit that Echo Liu is the Vice President of International Business Development for ZL EOR. To the extent that an answer is required in response to the remaining allegations contained in Paragraph 18, they are denied.

19. To the extent an answer is required in response to the allegations contained in Paragraph 19, they are denied.

20. Defendants deny all the allegations contained in Paragraph 20 of Plaintiff's First Amended Complaint.

21. Defendants admit that PE exports polyacrylamide to Texas from Oman as well as China. Defendants admit that ZL USA handles the importing of polyacrylamide to Texas.

Defendants deny that PE exports polyacrylamide directly to U.S. customers or potential customers of SNF USA. To the extent that an answer is required in response to the remaining allegations contained in Paragraph 21, they are denied.

22. Defendants deny all the allegations contained in Paragraph 22 of Plaintiff's First Amended Complaint.

23. The statements contained in Paragraph 23 are conclusions. To the extent a response is necessary, Defendants deny all the allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint.

24. Defendants deny all the allegations contained in Paragraph 24 of Plaintiff's First Amended Complaint.

25. The allegations contained in Paragraph 25 allege legal conclusions to which no answer is necessary or required. To the extent an answer is required, Defendants deny all allegations contained in Paragraph 25 of Plaintiff's First Amended Complaint.

26. The statements contained in Paragraph 26 are conclusions. To the extent a response is necessary, Defendants deny all the allegations contained in Paragraph 26 of Plaintiff's First Amended Complaint.

27. The statements contained in Paragraph 27 are conclusions. To the extent a response is necessary, Defendant denies all the allegations contained in Paragraph 27 of Plaintiff's First Amended Complaint.

28. Defendants admit that ZL USA and SNF USA are competitors in the polyacrylamide market.

29. Defendants deny all allegations contained in Paragraph 29 of Plaintiff's First Amended Complaint.

30. Defendants deny all allegations contained in Paragraph 30 of Plaintiff's First Amended Complaint.

31. The statements contained in Paragraph 31 are conclusions. To the extent a response is necessary, Defendants deny all the allegations contained in Paragraph 31 of Plaintiff's First Amended Complaint.

### CLAIMS FOR RELIEF

### COUNT I - VIOLATION OF THE LANHAM ACT-UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN 15 U.S.C. § 1125(a)

32. The responses to the foregoing Paragraphs are realleged herein.

33. Defendants deny all allegations contained in Paragraph 33 of Plaintiff's First Amended Complaint.

34. The statement contained in Paragraph 34 alleges legal argument/conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 34 of Plaintiff's First Amended Complaint.

35. The statement contained in Paragraph 35 alleges legal argument/conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 35 of Plaintiff's First Amended Complaint.

36. The statement contained in Paragraph 36 alleges legal argument/conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 36 of Plaintiff's First Amended Complaint.

37. The statement contained in Paragraph 37 is not an allegation. To the extent it requires a response, Defendants deny all allegations contained in Paragraph 37 of Plaintiff's First Amended Complaint.

38. The statement contained in this paragraph alleges legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 38 of Plaintiff's First Amended Complaint.

39. Defendants are without sufficient knowledge to admit or deny the allegations contained in Paragraph 39. To the extent an answer is required, ZL denies the allegations.

## COUNT II - CONSPIRACY

40. The responses to the foregoing Paragraphs are realleged herein.

41. Defendants deny all allegations contained in Paragraph 41 of Plaintiff's First Amended Complaint.

42. Defendants deny all allegations contained in Paragraph 42 of Plaintiff's First Amended Complaint.

43. Defendants deny all allegations contained in Paragraph 43 of Plaintiff's First Amended Complaint.

## AFFIRMATIVE DEFENSES

Defendants give notice that they may rely upon the following affirmative defenses. By setting forth these defenses, Defendants do not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to SNF USA. Defendants reserve the right to plead any and all affirmative defenses that may be evidence or appreciated after investigation and discovery in this matter.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint fails to state a claim for relief.

## SECOND AFFIRMATIVE DEFENSE

SNF USA's claims are barred by the doctrine of unclean hands, because SNF USA has engaged in the same wrongful conduct of which it accuses Defendants.

### THIRD AFFIRMATIVE DEFENSE

SNF USA's claims are barred, in whole or in part, by the doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE

SNF USA's claims are barred, in whole or in part, by the doctrine of waiver.

WHEREFORE, having fully answered, Defendants pray that judgment be entered in their favor and that the Court award Defendants all of their recoverable costs.

## ZL USA'S COUNTERCLAIMS

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between Defendants, SNF USA, and the additional counter-defendants set forth herein, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. This Court also has supplemental jurisdiction over ZL USA's claims because they are within the same case and controversy and involve the same parties pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to ZL USA's claims against SNF USA occurred in this judicial district. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(1), because ZL USA's principal U.S. office is located within this judicial district.

## THE PARTIES

4. ZL USA is a Delaware corporation registered to do business in Texas. Its principal office is located at 4406 W 12th Street, Houston, Texas 77055.

5. SNF S.A. ("SNF France") is a French company. Its principal place of business is ZAC de Milieux rue Adrienne Bolland, 42163, Andrezieux Boutheon, Auvergne-Rhones-Alpes, France.

6. SNF USA is a Delaware corporation registered to do business in Texas as SNF (TX) Inc. Its principal place of business is in Riceboro, Georgia, and its mailing address is PO Box 250, Riceboro, Georgia 31323.

7. SNF Oman LLC is an Omani Corporation ("SNF Oman"). Its mailing address in Oman is, PO Box 1296, Al Khuwair, Way 4144, Building A/2746/1, 1st Floor, Flat 110 Al Athaiba Oman.

8. Petroleum Polymer Co. LLC is an Omani Corporation ("PPC" and collectively with SNF France, SNF USA, and SNF Oman, "SNF Group"). Its mailing address in Oman is, PO Box 1296, Al Khuwair, Way 4144, Building A/2746/1, 1st Floor, Flat 110 Al Athaiba Oman.

## FACTS

9. SNF USA is owned and operated by the major global conglomerate SNF Group, principally coordinated and organized by SNF France. Headquartered in France, SNF Group is self-described as the market leader in the production of polyacrylamide used in agricultural, mining, paper, textile, water treatment, and personal care product industries worldwide. It has operations on every continent, employs 6,600 people. Its primary sales offices are located in China, France (via SNF France) and the United States (via SNF USA).

***ZL USA's Operations and Business***

10. ZL USA's main products for oil and gas operations in the U.S. are friction reducer/lubricant products (the "Lubricant Products"). Polyacrylamide imported from Oman is one of the raw materials used to produce these Lubricant Products.

11. ZL USA owns and operates plants located in Midland and Houston, Texas, where it combines polyacrylamide and other components (which are 100% sourced from the United States), to produce its final Lubricant Products. These are then sold to customers on the U.S. market for use in oil and gas operations.

12. The process employed by ZL USA to produce the Lubricant Products is environmentally friendly and cost efficient. The price-point for ZL USA's Lubricant Products

manufactured in the United States tend to be higher due to their correspondingly higher quality. This is directly related to Defendants' extensive investments made in research and new technology.

13. SNF Group's market and customer base is much greater than Defendants. The lion's share of SNF Group's customers are municipalities and companies around the world in the water and wastewater treatment industry. SNF Group via SNF USA and through the actions described herein, has asserted its market dominance to continue to grow its polyacrylamide-based offerings in the oil and gas business in the United States.

*PE Threatens SNF Group's Foothold in Oman*

14. In 2013, after considerable study and investigation, PE decided to build a production facility in Oman as part of its commitment to invest in and agreement with Company A. In 2014, PE began the initial phase of its plan to construct a factory when land in Duqm was granted. Subsequently, in 2016, the factory location was changed to Salalah.

15. In 2016, along with other companies, SNF Group (specifically the Omani-based entities SNF Oman) competed against PE for a 7-year contract to supply polyacrylamide to Company A.[1] PE was awarded the contract. PE's decision to engage Company A was premised on the expectation of future business opportunities. These opportunities are in jeopardy due to this sham lawsuit.

16. After losing the contract to PE, fair and square, SNF Group and SNF Oman have employed deceptive and manipulative strategies to harm Defendants and steal its business. SNF Group has been so bold as to recruit PE's Omani partner and CEO to work for PPC. As a consequence of not having an Omani CEO, PE stood to lose its contract with Company A and had

---

[1] The identities of Companies A, B, C, D, E, and F are known to and maintained by Defendants. Upon the entry of a protective order which includes an "attorneys' eyes only" classification, Defendants will produce identifying information for these entities under such designation.

to hire a new CEO and find a new Omani partner within two weeks. Additionally, SNF Group formed a joint venture with PE's Omani partner in 2017 to compete with PE.

17. Subsequently, in 2017, SNF Group's Omani-affiliates offered PE's CEO position, which jeopardized PE's operations. SNF Oman and the CEO's company established a joint venture in Oman during the same year.

18. In spite of PE being already awarded the Company A contract, SNF Oman continuously lobbied and convinced Company A to make them a contingency supplier—but through PE's contract with Company A. And even though there was no shortage in supply, PE was forced to issue a purchase order to SNF Oman to purchase their product. SNF Oman purposely failed to deliver the product to PE, compromising PE's ability to secure supply for the customer.

19. On October 20, 2018, while PE's plant was still under construction, a PE security guard witnessed an employee of SNF Oman trespass on PE's property, entering the plant and taking photographs with a camera.

20. It wasn't until late 2018—four years *after* PE's planning and during the construction of its Oman plant—that the United States imposed the significant tariffs on polyacrylamide from China, as cited by Plaintiffs.

***SNF Groups' Interference with ZL USA's Operations***

21. On November 5, 2020, ZL USA and Company B entered into an agreement whereby ZL USA would supply Company B with products for its oil and gas operations. Additionally, ZL USA is party to purchase order agreements with Companies C, D, E and F. These companies place orders with ZL USA when they are in need of products.

22. SNF USA intentionally made misleading and disparaging statements to influence Companies B, C, D, E and F and cast ZL USA in a negative light. These statements include that

ZL USA is guilty of anti-dumping practices; violating Federal Trade Commission regulations, 15 U.S.C. § 1125(a); mislabeling its Lubricant Products to deceive customers, including a misrepresentation as to the origin of these products; and involved in unfair competition. SNF USA also told these companies that ZL USA would not be able to continue supplying the friction reduction products they need due to the SNF USA's lawsuit, and therefore, the customers should purchase products from SNF USA.

23. As a scare tactic, SNF USA also informed existing customers that it would bring this (sham) lawsuit against ZL USA, which would ultimately destroy it and thereby jeopardize and impair these customers' supply of important materials.

24. Company B has explained to ZL USA that it is concerned about the information SNF USA brought to its attention regarding ZL USA's alleged questionable practices and the instant lawsuit. As of today, these false statements continue to influence Company B's purchase decision. In spite of having a signed contract, the company refuses to do business with ZL USA. Since getting this information from SNF USA, Companies C, D, E and F have expressed their concerns to ZL USA and are afraid and hesitant to expand ZL USA's business within their portfolios.

25. A senior manager for Company F admitted that he was approached by SNF USA and told not to purchase from ZL USA because the company would not be able to fulfil its obligation to supply the products any longer. Since May 2021, Company E stopped doing business with ZL USA.

26. Upon information and belief, SNF USA made defamatory remarks to Companies A, B, C, D and E in an attempt to tarnish ZL USA's reputation. SNF USA told representatives

from the companies that ZL USA acted untruthfully by mislabeling the origin of its Lubricant Products. SNF USA's statements portray ZL USA in a negative light and are false.

27. Further, these tactics and deliberate attempts to undermine ZL USA have been carried out by SNF USA and its agents at the insistence and direction of SNF France, with substantial aid from SNF Oman and PPC. SNF Oman and PPC's outright corporate espionage has provided the SNF USA with a passable basis for lodging its false representations to ZL USA's existing and potential customers.

28. SNF France has directed SNF USA, SNF Oman, and PPC to perpetrate this scheme because of SNF France's inability to buy out its competition in ZL USA while the latter was in a nascent stage. Since 2014, SNF France's executives, including Pascal Remy and René Pich have made multiple attempts to purchase Henan Zhengiia Green Energy CO. Ltd. each of which was rebuffed. Because SNF France could not then purchase ZL USA—and because of the present threat to its business that ZL USA presents via its superior products and offerings in the oil and gas sector—SNF France and its agents, upon information and belief, have directed that SNF USA engage in its interference with ZL USA's dealings.

29. ZL USA's contract with Company A is up for renewal or extension after July 2023. That extension is now in jeopardy, however, because Company A is concerned about this pending lawsuit.

30. PE and SNF Oman are the frontrunners for a new contract with Company A but because of the ongoing (sham) lawsuit, it is unlikely PE will be allowed to bid.

31. SNF USA should be held accountable for interfering the ZL USA's contracts, disparagement of ZL USA and its products, and the defamation of ZL USA.

## COUNTERCLAIMS

## COUNT I – TORTIOUS INTERFERENCE WITH A CONTRACT
**(As to SNF USA)**

32. Defendants reallege and incorporate each and every allegation contained in the paragraphs above.

33. ZL USA has contracts with several companies in the oil and gas industry including Company B. SNF USA had knowledge of ZL USA's contracts with these companies, including Company B.

34. SNF USA intentionally interfered with ZL USA's existing contracts, including its contract with Company B.

35. SNF USA's intentional interference with these existing contracts is the proximate cause of damages to ZL USA.

36. Due to SNF USA's actions, ZL USA has lost existing business and future opportunities causing it to suffer financial damages.

## COUNT II – UNFAIR COMPETITION BY DECEPTIVE TRADE PRACTICE
**(As to SNF USA)**
**(Tex. Bus. & Com. Code § 17.46 and Common Law)**

37. Defendants reallege and incorporate each and every allegation contained in the paragraphs above.

38. In violation of Tex. Bus. & Com. Code § 17.46, SNF USA engaged in unfair competition by employing deceptive trade practices when it disparaged ZL USA's goods, services, and business by making false and misleading representations to existing and potential customers.

39. SNF USA made disparaging remarks about ZL USA and its Lubricant Products to its current customers, Companies B, C, D, E, and F.

40. As a direct and proximate result of SNF USA's unfair competition tactics, ZL USA has suffered irreparable harm to its brand and reputation. Companies B, C, D, E and F either refuse to or are reluctant to do anymore business with ZL USA. Consequently, ZL USA has suffered damages, including lost profits from their customers.

## COUNT III – DEFAMATION
### (As to SNF USA)

41. Defendants reallege and incorporate each and every allegation contained in the paragraphs above.

42. SNF USA made false statements about ZL USA to their customers and had knowledge that the statements were false.

43. The false statements made by SNF USA were directed at ZL USA's professional reputation and practices. SNF USA told customers that ZL USA was untruthful in telling them that their products were from Oman.

44. Because SNF USA made these false statements to ZL USA customers, it suffered a loss of business as well as reputational damages.

## COUNT IV – CIVIL CONSPIRACY
### (As to SNF France, SNF USA, SNF Oman, and PPC)

45. Defendants reallege and incorporate each and every allegation contained in the paragraphs above.

46. SNF USA, SNF France entered into the specific objective to unfairly compete with ZL USA, and to interfere with its business relationships.

47. SNF USA has knowingly and intentionally agreed to act in concert against ZL USA and in violation of the law as alleged herein, and SNF USA have taken active and overt steps to that end.

48. As a result of SNF USA's conspiracy, ZL USA has suffered damages as claimed herein, and SNF USA has enriched itself.

### **COUNT V – DECLARATORY RELIEF**

49. Defendants reallege and incorporate each and every allegation contained in the paragraphs above.

50. In its First Amended Complaint, SNF USA alleges that in an effort avoid United States tariffs that apply to Chinese Polyacrylamide, ZL USA is marketing its product, "Polyacrylamide" as made-in-Oman, instead of China where it is actually made. SNF USA alleges that American companies have been deceived and that it has lost profits due to ZL USA's actions.

51. Contrary to SNF USA's contention, the products marketed and sold by ZL USA include polyacrylamide as raw materials, at times sourced from Oman and China. But ZL USA's final Lubricant Products are also comprised of other components, at least some of which are entirely produced in the United States.

52. An actual case or controversy exists between Defendants and SNF USA regarding the alleged misrepresentations of origin of Defendants' Lubricant Products. Given that polyacrylamide is the primary component in ZL USA's actual marketed and sold friction reducers, and given Plaintiffs' above-captioned and -entitled suit is predicated on allegations that Defendants' have misrepresented the geographic origin of polyacrylamide, an actual case or controversy exists with respect to the geographic origin of ZL USA's Lubricant Products. Further, an actual case or controversy regarding the geographic origin of Defendants' Lubricant Products is evidenced by SNF USA's statements to ZL USA's customers that ZL USA misrepresents the origin of its Lubricant Product. Accordingly, a declaration that ZL USA has not made any such misrepresentation is necessary.

53. Pursuant to the Declaratory Judgment Act of 1934, 28 U.S.C. §§ 2201-2202, Defendants are entitled to and should be awarded declaratory relief that ZL USA has not misrepresented the origin of its Lubricant Products sold in the United States.

## PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request that the Court enter judgment in their favor and:

    a. Actual damages;

    b. Pre- and post-judgment interest at the maximum rates allowed by law;

    c. Attorneys' fees;

    d. Costs of Court;

    e. A declaration that ZL USA has not misrepresented the origin of lubricant products marketed for sale in the United States; and

    f. Other such further relief, in law or at equity, to which Defendants may be justly entitled.

## JURY DEMAND

Defendants demand a trial by jury for all claims so triable.

Dated: September 21, 2021

Respectfully Submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Mary-Olga Lovett*
**Mary-Olga Lovett**
Texas Bar No. 00789289
Email: lovettm@gtlaw.com
**Aimee Housinger**
Texas Bar No. 24083203
Email: housingera@gtlaw.com
**Kyle B. Dugan**
State Bar No. 24097625
Email: duganky@gtlaw.com
**Brianna L. Zook**
State Bar No. 24106624
Email: zookb@gtlaw.com
**Jeremy L. Simmons**
State Bar No. 24066689
Email: simmonsje@gtlaw.com
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile: (713) 754-7541

**Dale Wainwright**
State Bar No. 00000049
Email: wainwrightd@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210

*Attorneys for Defendants ZL Chemicals Ltd., Polymer Experts LLC, and ZL EOR Chemicals Ltd.*

## **CERTIFICATE OF SERVICE**

    I hereby certify that all parties and counsel of record have been served with a copy of this document via the Court's electronic filing system on the 21st day of September 2021.

                                                */s/ Kyle B. Dugan*
                                                Kyle B. Dugan